# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JUNHE QIU,
    Plaintiff,

vs.

UNIVERSITY OF CINCINNATI et al.,
    Defendants.

Case No. 1:18-cv-634
Litkovitz, M.J.

**ORDER**

Plaintiff Junhe Qiu, a former student who was academically dismissed from the

University of Cincinnati ("UC"), brings this action against defendants UC, Dr. Neville Pinto, and

Dr. Catherine Losada, alleging that defendants violated Title II of the Americans with

Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a),

and the Fourteenth Amendment to the United States Constitution, and discriminated against him

on the basis of race, national origin, and color in violation of both federal and state law. (Doc.

1). He also brings claims of hostile environment, retaliation, and intentional infliction of

emotional distress. (*Id.*). The Court previously issued an order denying plaintiff's motion for a

temporary restraining order ("TRO") after a hearing on September 18, 2018. (Doc. 10).[1] This

matter is now before the Court on defendants' motion to dismiss plaintiff's complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 18), plaintiff's response in

opposition (Doc. 21), and defendants' reply memorandum. (Doc. 22).

## I. Allegations in the Complaint (Doc. 1)

Plaintiff is an international student from China who enrolled in the undergraduate

program at UC's College-Conservatory of Music ("CCM") in August 2016 on a music

scholarship. (Doc. 1, Complaint at ¶¶ 3, 18). Plaintiff majored in violin performance and

became a member of the CCM Concert orchestra. (*Id.* at ¶¶ 20-21). Plaintiff held an F-1 visa

---

[1] The Court also denied plaintiff's motion for reconsideration on his motion for a TRO. (Doc. 12).

issued by the United States Department of State, which was valid only if he remained in "duration of status" by being enrolled in classes at CCM in compliance with his I-20.[2] (*Id.* at ¶ 3).

Plaintiff suffers from a chronic heart condition. In November 2014, plaintiff had heart surgery in China after he collapsed during a music festival in Europe. (*Id.* at ¶ 16). The heart condition was not successfully treated and persisted when plaintiff came to the United States to study at CCM. (*Id.*). Plaintiff began receiving treatment at the University of Cincinnati Health Arrythmia Center in October 2016. (*Id.* at ¶ 23). On November 12, 2016, while practicing in the CCM orchestra rehearsal room, plaintiff collapsed and was transported to the emergency room where he was diagnosed with syncope and collapse from a heart defect. (*Id.*). Two days later, plaintiff underwent surgery where an implant was placed in his chest. (*Id.*).

In the spring semester of 2017, plaintiff enrolled in defendant Dr. Catherine Losada's Music Theory 2 class. (*Id.* at ¶ 24). On March 10, 2017, defendant Losada accused plaintiff of academic dishonesty by completing a homework assignment with the unauthorized use of her instructor's manual. (*Id.* at ¶ 25). Plaintiff alleges that he never had the instructor's manual and the accusation was false. (*Id.*). Nevertheless, plaintiff signed an academic dishonesty confession form to "avoid more trouble" from defendant Losada. (*Id.*). Plaintiff alleges that defendant Losada "did not tell [him] that he could disagree with the accusation and that he had the right to challenge the accusation and have a hearing on the accusation." (*Id.*). A few weeks later, on March 28, 2017, defendant Losada again accused plaintiff of academic dishonesty by alleging that his answer was too similar to the model answer given in the teacher's manual. (*Id.* at ¶ 26). Plaintiff alleges that he did not have the instructor's manual. (*Id.*). Plaintiff requested a college

---

[2] Form I-20 is a Certificate of Eligibility for Nonimmigrant Student Status issued by the University of Cincinnati. (Doc. 1, Complaint at ¶ 3).

hearing panel, which found him guilty of academic dishonesty. (*Id.*). Defendant Losada subsequently failed plaintiff from the course. (*Id.*).

Plaintiff did not attend the 2017 fall semester at CCM because he returned to China for medical treatment due to a shoulder/arm injury. (*Id.* at ¶ 27).

Plaintiff returned to CCM for the 2018 spring semester and reenrolled in defendant Losada's Music Theory 2 class. (*Id.* at ¶¶ 28, 30). On March 7, 2018, plaintiff passed out during violin rehearsal and was taken to the emergency room where he was diagnosed with syncope, collapse, and sinus tachycardia. (*Id.* at ¶ 31). On March 9, 2018, defendant Losada for a third time accused plaintiff of academic dishonesty by completing his homework assignment using the instructor's manual. (*Id.* at ¶ 30). Plaintiff requested a hearing, which was scheduled for April 20, 2018. (*Id.*). Plaintiff missed the hearing on April 20, 2018 due to chest pain. (*Id.* at ¶ 32). Plaintiff alleges that he was "forced to remain in his bed," "most probably drifted in and out of consciousness," and "did not have the strength to inform the Dean or anyone else that he was very sick." (*Id.*). The hearing was held in plaintiff's absence and he was dismissed from CCM. (*Id.* at ¶ 33).

While recovering from the chest pain, plaintiff found out that he had been dismissed from CCM. (*Id.*). He spoke with Dean Scott Lipscomb and requested that CCM accommodate him by providing a new hearing due to his heart condition. (*Id.*). Dean Lipscomb promised to look into his case and review his request for accommodation by reason of his medical disability. (*Id.*). Dean Lipscomb did not get back to plaintiff and he did not receive a new hearing. (*Id.*). Plaintiff then met with another CCM administrator, Dean Stephanie Schlagel, to a request an accommodation in the form of a new hearing. (*Id.*). After the meeting, Dean Schlagel informed plaintiff that his dismissal from CCM was final. (*Id.*).

Four months after his dismissal from UC, plaintiff filed this lawsuit. As relief, plaintiff seeks a permanent injunction ordering defendants to reinstate him in classes at CCM[3] and monetary damages. (Doc. 1 at 18).

## II. Rule 12(b) Standard

Under Fed. R. Civ. P. 12(b)(6), a party may challenge a complaint for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public

---

[3] Plaintiff seeks an Order "to enjoin Defendants from barring Plaintiff from enrolling in fall semester classes, to enable plaintiff to register and attend classes at CCM UC under his original music scholarship, so that his I-20 remains in duration of status and his F-1 is not invalidated and that he is not placed in removal proceedings by U.S. Immigrations and Customs Enforcement." (Doc. 1 at 18). Much of plaintiff's requested relief is moot after the Court's September 19, 2018 Order denying plaintiff's motion for a TRO and September 25, 2018 Order denying plaintiff's motion for reconsideration. However, for the purposes of this motion, the Court will assume that plaintiff can still seek injunctive relief through reinstatement since plaintiff seeks to enjoin defendants from barring his attendance at UC and to permit him to attend classes at CCM under his original music scholarship.

records, items appearing in the record of the case and exhibits attached to the defendant[s']
motion to dismiss so long as they are referred to in the Complaint and are central to the claims
contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).
*See also Bd. of Trustees Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 843 (S.D. Ohio
2002) ("[A] court may rely on documents outside the pleadings, if those documents 'simply [fill]
in the contours and details of the plaintiff's complaint, and [add] nothing new,' without
converting the motion to dismiss into a motion for summary judgment.") (quoting *Yeary v.
Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

### III. Motion to Dismiss (Doc. 18)

Defendants move to dismiss all claims against defendants UC, Dr. Neville Pinto, and Dr.
Catherine Losada. (Doc. 18).

### A. Plaintiff's Title II ADA Claims and Rehabilitation Act Claims

Defendants argue that plaintiff's ADA claims against defendants Pinto and Losada in
their official capacities fail as a matter of law. (Doc. 18 at 18). Defendants also argue that the
ADA claims against defendant Losada in her individual capacity must be dismissed because the
ADA does not permit public employees to be sued in their individual capacities. (*Id.*) (citing
*Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007)). Defendants argue that plaintiff's
ADA claims against UC are barred by the Eleventh Amendment and fail to state a plausible
claim for relief under the ADA. (*Id.* at 18-22). Defendants argue that plaintiff's Rehabilitation
Act claims, which are reviewed under the same standards governing the ADA, should be
similarly dismissed. (*Id.* at 22-23).

In response, plaintiff cites to the Sixth Circuit's decision in *Hostettler v. College of
Wooster*, 895 F.3d 844 (6th Cir. 2018), as requiring a "heightened level of accommodation for

the plaintiff with a medical disability" and mandating that plaintiff receive a new hearing as an accommodation under the ADA. (Doc. 21 at 3). Plaintiff states that he timely requested a new hearing after he missed the April 20, 2018 academic misconduct hearing and notified defendants that he was absent from the hearing as a result of a medical condition involving his heart. (*Id.*).

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim that he was dismissed from UC in violation of the ADA, plaintiff must allege that: (1) he has a disability; (2) he is otherwise qualified; and (3) he was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). *See also S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). "A handicapped or disabled person is 'otherwise qualified' to participate in a program if [he] can meet its necessary requirements with reasonable accommodation." *Kaltenberger v. Ohio Coll. of Podiatric Medicine*, 162 F.3d 432, 435-36 (6th Cir. 1998) (internal citations omitted). *See also Gati v. W. Ky. Univ.*, __ F. App'x __, No. 18-5732, 2019 WL 364449, at *2 (6th Cir. Jan. 29, 2019).

Similar to the ADA, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794(a). "Apart from [§ 504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same." *E. Ky.*

*Univ.*, 532 F.3d at 452-53 (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 n.6 (2d Cir.

2002)). Thus, claims brought under the Rehabilitation Act and ADA are generally reviewed

under the same standards. *Shaikh*, 608 F. App'x at 353 (citing *Jakubowski v. Christ Hosp., Inc.*,

627 F.3d 195, 201 (6th Cir. 2010)). Courts may analyze claims under the ADA and § 504 of the

Rehabilitation Act together because both statutes set forth "the same remedies, procedures, and

rights." *Thompson v. Williamson Cty., Tenn.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). *See also*

*Crochran Through Shields v. Columbus City Sch.*, 278 F. Supp. 3d 1013, 1024 (S.D. Ohio 2017),

*aff'd*, 748 F. App'x 682 (6th Cir. 2018).

The ADA and Rehabilitation Act require a covered university to offer reasonable

accommodations for a student's known disability unless the accommodation requires the

university "to lower or to effect substantial modifications of standards to accommodate a

handicapped person." *Shaikh*, 608 F. App'x at 353 (citing *Kaltenberger*, 162 F.3d at 436 (in turn

quoting *Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). "While a university 'need not be

required to make fundamental or substantial modifications to accommodate the handicapped, it

may be required to make reasonable ones.'" *Id.* However, a student in an institution of

postsecondary education must notify the university of his need for an accommodation and these

institutions have no duty to identify students with disabilities. *Pierre v. Univ. of Dayton*, No.

3:15-cv-362, 2017 WL 1134510, at *10 (S.D. Ohio Mar. 27, 2017) (citing authority from the

U.S. Department of Education and cases stating that a student must request an accommodation

for his disability). *See also Shaikh*, 608 F. App'x at 353 ("'A publicly funded university is not

required to provide accommodation to a student under the ADA or Rehabilitation Act until the

student provides a proper diagnosis of his claimed disability and specifically requests an

accommodation.'") (quoting *Carten v. Kent State Univ.*, 78 F. App'x 499, 500-01 (6th Cir.

2003)); *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 806 (N.D. Ohio 2015) ("It is the plaintiff's burden to show he requested an accommodation for his disability."). Courts must be mindful of the deference owed to "professional academic judgments when evaluating the reasonable accommodation requirement." *Kaltenberger*, 162 F.3d at 436.

As an initial matter, plaintiff's Title II and § 504 claims against defendant Losada in her individual capacity must be dismissed as a matter of law. *See Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009) ("Title II of the ADA does not, however, provide for suit against a public official acting in [her] individual capacity."); *Barnum v. Ohio State Univ. Med. Ctr.*, No. 2:12-cv-930, 2014 WL 3845923, at *2 (S.D. Ohio Aug. 5, 2014) (noting that individuals are not personally liable under the Rehabilitation Act). As to the Title II and § 504 claims against the remaining defendants, the Court concludes that plaintiff fails to state a claim upon which relief may be granted against defendant UC and defendants Pinto and Losada in their official capacities.

Plaintiff has failed to state a claim against UC and defendants Pinto and Losada in their official capacities under Title II of the ADA and § 504 of the Rehabilitation Act because he has not alleged that he was otherwise qualified to continue at CCM and meet the program's requirements with a reasonable accommodation. Plaintiff alleges that he missed the academic misconduct hearing on April 20, 2018 "because of his illness—chest pain and syncope." (Doc. 1, Complaint at ¶ 32). Plaintiff alleges he was forced to remain in bed and did not have the strength to inform UC personnel that he was unable to attend the hearing. (*Id.*). Plaintiff alleges that *after* recovering from chest pain and *after* finding out that he had been dismissed from CCM, he then requested a new hearing as an accommodation for the heart condition that

allegedly caused him to miss the hearing. (*Id.* at ¶ 33).[4] The new hearing that plaintiff seeks as an accommodation is not reasonable as a matter of law because he waited until after he was dismissed from the university to request a new hearing. "The majority of federal courts agree that an after-the-fact accommodation request is not timely" and does not trigger any obligation on part of the University. *Shaikh v. Lincoln Mem'l Univ.*, 46 F. Supp. 3d 775, 785 (E.D. Tenn. 2014), *aff'd*, 608 F. App'x 349 (6th Cir. 2015) (citing *Kaltenberger*, 162 F.3d at 436 (plaintiff had already failed two courses in first year of program before requesting any specific accommodation); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d at 795-96 (1st Cir. 1992) (plaintiff's request to take oral examination was not reasonable because it was not made prior to failing exam); *Manickavasagar v. Va. Commonwealth Univ. Sch. of Med.*, 667 F. Supp. 2d 635, 646-47 (E.D. Va. 2009) (accommodation requests were unreasonable because they were untimely)). *See also Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465-66 (4th Cir. 2012) (concluding that a request for readmission after a student was dismissed for unprofessional acts was "not a disability accommodation, but a second chance" and that denial of such a request was "not a cause of action under the ADA") (internal quotation marks omitted); *Pierre*, 2017 WL 1134510, at *10 (plaintiff "has failed to state a claim for failure to accommodate [under Title II of the ADA] because he did not mention a need for any accommodation until after his disciplinary hearing."); *Profita v. Regents of the Univ. of Colo.*, No. 16-cv-03032, 2017 WL 1023379, at *3-4 (D. Colo. Mar. 15, 2017) (explaining that plaintiff's requested accommodation

---

[4] Indeed, at the hearing on plaintiff's motion for a TRO, plaintiff testified that UC officials were not aware of his need for a disability accommodation until after May 22, 2018, the date the final decision to academically dismiss him from the University was issued. (Doc. 10 at 11). In addition, after receiving notice of the hearing decision, inquiring about the appeals process, and submitting a formal appeal, plaintiff did not mention that his disability prevented him from attending the first hearing. (*Id.*). As plaintiff concedes in his response in opposition to defendants' motion to dismiss, he initially emailed Aneisha K. Mitchell, Director of the Division of Student Affairs, on April 25, 2018 to inquire about the appeals process. Plaintiff informed Ms. Mitchell on April 28, 2018 that he sought to "clarify the truth," but did not mention that his heart condition prevented him from attending the hearing. (Doc. 21 at 10) (citing TRO Ex. A-6, Doc. 6-7 at 1-3).

amounted to a "retroactive leniency," which is not a reasonable accommodation under the ADA because relief must always be prospective), *aff'd*, 709 F. App'x 917 (10th Cir. 2017), *cert. denied sub nom. Profita v. Regents of Univ. of Colo.*, 138 S. Ct. 1020 (2018). The accommodation that plaintiff seeks, i.e., reinstatement and the provision of a new disciplinary hearing, amounts to retroactive leniency, not a reasonable accommodation, because plaintiff had already been dismissed from the university when he advised UC officials that his heart condition caused him to miss the disciplinary hearing.

Nevertheless, plaintiff alleges that the University already knew of his heart condition and therefore was on notice of his disability. (Doc. 1, Complaint at ¶¶ 2, 36). Accepting this allegation as true, plaintiff still had the obligation to notify UC of his need for an accommodation prior to his academic dismissal. In addition, UC had no duty in the first place to identify plaintiff as a student with a disability in need of an accommodation, and general knowledge of plaintiff's medical condition was not sufficient to give UC notice that he was experiencing chest pain on the date of the hearing such that he needed an accommodation in the form of a new hearing. *See Pierre*, 2017 WL 1134510, at *10; *Shaikh*, 608 F. App'x at 353; *Buescher*, 86 F. Supp. 3d at 806.

Plaintiff's citation to *Hostettler v. College of Wooster*, 895 F.3d 844 (6th Cir. 2018) as "mandat[ing] a heightened level of accommodation for the plaintiff with [a] medical disability" is conclusory and unpersuasive. (Doc. 21 at 3-4). The plaintiff in *Hostettler* was a terminated university employee who asserted a failure to accommodate claim under Title I of the ADA, 42 U.S.C. § 12112(b)(5)(A). *Hostettler*, 895 F.3d at 852-53. The Sixth Circuit denied summary judgment to the college on the basis that the plaintiff presented evidence creating a genuine dispute of fact that she could perform the essential functions of her job with a modified work schedule as a reasonable accommodation for her disability. *Id.* at 855-57. Beyond forming his

own conclusion on the law and conflating the distinctions between Titles I and II of the ADA,

plaintiff has made no attempt to connect the facts and legal standards of the Title I ADA decision

in *Hostettler* to his claim for reasonable accommodation against UC under Title II of the ADA.

*See Whitfield v. Tenn.*, 639 F.3d 253, 257-58 (6th Cir. 2011) (noting the distinction between Title

I, which specifically addresses employment, and Title II, which addresses "public services" and

explaining that the Sixth Circuit "has never decided whether Title II applies to employment

cases.") (citing *Dean v. City of Bay City, Mich.*, 239 F. App'x 107, 112 (6th Cir. 2007)).

Plaintiff also brings causes of action for "hostile environment" and "retaliation," though

he does not specify which federal or state statute underlies these claims. (Doc. 1, Complaint at

¶¶ 60, 65). Plaintiff has not cited, and the Court has not found, any federal cases within the Sixth

Circuit that recognize a hostile environment claim under the ADA or Rehabilitation Act. In

addition, courts across the country are generally divided on whether a claim for hostile

educational environment is cognizable under either the ADA or Section 504 of the Rehabilitation

Act. *Toma v. Univ. of Hawaii*, 304 F. Supp. 3d 956, 964 (D. Haw. 2018) (discussing lack of

authority in the Ninth Circuit recognizing a claim for hostile educational environment under the

ADA); *Barry as next friend of A.P. v. Cedar Rapids Cmty. Sch. Dist.*, No. C17-120, 2019 WL

1234330, at *15 n.9 (N.D. Iowa Mar. 15, 2019) (citing *M.P. ex rel. K and D.P. v. Ind. Sch. Dist.

No. 721*, 439 F.3d 865 (8th Cir. 2006) (explaining that the Eighth Circuit neither forecloses nor

endorses a hostile educational environment claim under the Rehabilitation Act); *Guckenberger v.

Bos. Univ.*, 957 F. Supp. 306, 314 (D. Mass. 1997) (recognizing a claim for hostile learning

environment under the ADA and Rehabilitation Act). Even assuming that a hostile learning

environment claim is cognizable under Sixth Circuit precedent, plaintiff has failed to allege facts

plausibly suggesting that he was subjected to such an environment in this case. Plaintiff has not

alleged he was subjected to unwelcome harassment based on his alleged disability or that such harassment was sufficiently severe or pervasive to alter the conditions of his education. *See Guckenberger*, 957 F. Supp. at 314.

Plaintiff also appears to allege that defendants "retaliated" against him by dismissing him from CCM when he was unable to attend the hearing as a result of his disability. (Doc. 1, Complaint at ¶ 65). Plaintiff alleges that he was engaged in protected activity by "challenging Defendant Losada['s] accusations of homework cheating using the instructor's manual in March 2017 and requesting a college panel hearing[.]" (*Id.*). Title V, the anti-retaliation provision of the ADA, provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Here, there is no causal connection between plaintiff's alleged protected activity and any alleged discriminatory actions on the part of defendants. The activity that plaintiff alleges as protected—challenging defendant Losada's accusations and requesting a hearing—did not arise from any "act" or "practice" made unlawful by the ADA. Rather, plaintiff challenged the accusations and requested a hearing because he denied responsibility for academic misconduct. Any alleged violation of the ADA occurred after the hearing process was complete and when defendants refused to accommodate plaintiff with a new hearing. However, as stated above, plaintiff has failed to state a claim for

relief for failure to accommodate under Title II of the ADA.[5] Therefore, defendants' motion to dismiss plaintiff's Title II ADA and § 504 Rehabilitation Act claims is granted.

## B. Plaintiff's National Origin, Race, and Color Discrimination/State Law Claims

### a. Section 1981 claims

Plaintiff brings claims for "national origin, race, [and] color discrimination" against all defendants under 42 U.S.C. § 1981, which "prohibit[s] racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012). "Ohio law treats the relationship between a university and its students as contractual in nature." *Reeves v. Shawnee State Univ.*, No. 1:16-cv-765, 2018 WL 582555, at *8 (S.D. Ohio Jan. 29, 2018) (citing *Al-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355, 359 (6th Cir. 2015)).

Defendants move to dismiss plaintiff's national origin, race, and color discrimination claims brought under 42 U.S.C. § 1981. (Doc. 18 at 23-25). Defendants argue that the Eleventh Amendment bars plaintiff's § 1981 claims for money damages against UC and defendants Pinto and Losada in their official capacities. (*Id.* at 23-24). Defendants also argue that defendant Losada cannot be held liable in her individual capacity under § 1981. (*Id.* at 24). Defendants additionally argue that plaintiff has failed to state a prima facie case under § 1981 because he has not alleged that he was qualified to continue in the CCM program and that he was treated differently from similarly-situated students outside his protected class. (*Id.* at 25).

---

[5] Because the Court has determined that plaintiff has not stated a plausible claim for relief under Title II for failure to accommodate, the Court need not determine whether plaintiff's Title II claims against UC and defendants Pinto and Losada in their official capacities for monetary damages are barred by the Eleventh Amendment. *See Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007) (holding that under *U.S. v. Georgia*, 546 U.S. 151 (2006), "the constitutional question-abrogation of Eleventh Amendment immunity-will be reached only after finding a viable claim under Title II"). The Court also notes that state entities and state officials acting on behalf of the entity are not entitled to Eleventh Amendment immunity in official capacity claims brought under the Rehabilitation Act. *See Tanney v. Boles*, 400 F. Supp. 2d 1027, 1047 (E.D. Mich. 2005) ("It is settled that states waive their Eleventh Amendment immunity when they accept federal funds.") (citing *Gean v. Hattaway*, 330 F.3d 758, 775 (6th Cir. 2003); *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001)).

In response, plaintiff alleges that he has pled the necessary elements under *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), to state a claim for relief under § 1981. (Doc. 21 at 4). Plaintiff alleges that he is Chinese, suffered an adverse action as a result of his dismissal from CCM, and can show that similarly situated students outside his protected class continued to pass the Music Theory class. (*Id.*). Plaintiff states that "[t]he heart of the discrimination claim is that Defendant Losada has shown a pattern and practice of discriminating against students of Asian national origin, race and color" by accusing them of cheating and increasing discipline against students who question her mistreatment. (*Id.*).

As defendants correctly note, plaintiff's § 1981 claims against UC are barred by the Eleventh Amendment. The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," including public universities like UC. *McCormick*, 693 F.3d at 661-62. "It is well-established that the University of Cincinnati is an arm of the State of Ohio and entitled to Eleventh Amendment sovereign immunity." *Al-Maqablh v. Univ. of Cincinnati Coll. of Med.*, No. 1:11-cv-531, 2012 WL 6675761, at *2 (S.D. Ohio Dec. 21, 2012) (citing *Thomson v. Harmony*, 65 F.3d 1314, 1319 (6th Cir. 1995); *Dillion v. University Hosp.*, 715 F. Supp. 1384, 1386-87 (S.D. Ohio 1989)). Plaintiff's § 1981 claims against defendants Pinto and Losada in their official capacities for monetary damages are also barred by the Eleventh Amendment. *McCormick*, 693 F.3d at 662 (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")).

Plaintiff's § 1981 claims against defendant Losada in her individual capacity must be also dismissed because "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an

individual state actor acting in [her] individual capacity." *Id.* at 661. Therefore, the complaint does not state a claim for relief under § 1981 against defendant Losada in her individual capacity.

While the Eleventh Amendment does not preclude a suit against state officials acting in their official capacities for prospective injunctive relief, *McCormick*, 693 F.3d at 662, plaintiff nevertheless fails to state a claim for relief under § 1981. To establish a § 1981 claim under the *McDonnell Douglas* framework, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of the defendants in the pursuit of his education; (3) he was qualified to continue in the pursuit of his education; and (4) he was treated differently from similarly situated students who are not members of the protected class. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (noting that a plaintiff may substitute for the fourth element in the typical *McDonnell Douglas* framework evidence that similarly situated individuals outside the protected class received better treatment than he)). Although a plaintiff need not precisely plead the prima facie case elements as required under the *McDonnell Douglas* evidentiary framework, a plaintiff must allege sufficient factual content from which a court could draw the reasonable inference that the defendants discriminated against him because of his race. *Keys*, 684 F.3d at 610.

Defendants concede that plaintiff has plausibly alleged that he is Chinese and suffered an adverse action when he was dismissed from the university. Assuming that plaintiff has plausibly alleged that he is otherwise qualified to continue at CCM, though defendants contend otherwise, he has failed to plead specific facts to show that he was dismissed from the university *because* of his race. Plaintiff has not alleged facts creating a plausible inference that he was treated

15

differently than a similarly-situated student outside of his protected class or that his race, color, or national origin played any role in defendant Losada's actions. In the facts of his complaint, plaintiff alleges that defendant Losada "has a pattern and practice of discriminating against music students of Asian origin by accusing them of academic dishonesty." (Doc. 1, Complaint at ¶ 35). Plaintiff names two students of Asian origin who he claims were also "victims of [Losada's] relentless pattern [of] discrimination." (*Id.*). However, plaintiff's complaint contains no direct or inferential allegations that similarly situated students outside his protected class were treated more favorably and is based on no more than mere "labels and conclusions." *Noble v. Genco I, Inc.*, No. 2:10-cv-648, 2010 WL 5541046, at *3 (S.D. Ohio Dec. 30, 2010) (dismissing race discrimination claim because plaintiff pled no direct or inferential facts that defendant treated him differently than similarly situated white employees). *See also El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 735 (6th Cir. 2015) (factual allegations about discriminatory conduct based on nothing more than the plaintiff's belief are "naked assertions devoid of further factual enhancement" and are insufficient to state a claim).

In his memorandum in opposition to defendants' motion to dismiss, plaintiff refers to the affidavit of Yi-Chen Hu, which the Court previously considered on his motion for reconsideration of the Court's Order denying his motion for a TRO. (Doc. 21 at 5). Plaintiff argues that this affidavit demonstrates "a substantial likelihood of discrimination and retaliation by defendant Losada." (*Id.*). Aside from the fact that the affidavit was not included or referenced in plaintiff's complaint, the affidavit still does not cure the defect inherent in the complaint—plaintiff has failed to allege he was treated differently from or less favorably than similarly situated students who are not members of his protected class. Accordingly, plaintiff's claims under § 1981 must be dismissed.

16

### b. Title VII and Ohio Rev. Code § 4112.02 Claims and Hostile Environment Claims

Plaintiff alleges that defendants discriminated against him on the basis of national origin, race, and color in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and Ohio Rev. Code § 4112.02. (Doc. 1, Complaint at ¶ 56). Plaintiff also brings claims for "hostile environment" against all defendants based on his "national origin, race, and color," though he does not specify the underlying federal or state statutes that accompany these claims. (*Id.* at ¶¶ 60-61).

Both Title VII and Ohio Rev. Code § 4112.02 govern discrimination in employment and are therefore inapplicable to this case because plaintiff has not alleged he was employed by UC or that he suffered an adverse action in relation to his employment with UC. To the extent that plaintiff seeks to bring "hostile environment" claims against defendants under these statutory provisions, these claims likewise fail because he has not alleged he was an employee of UC.

In addition, plaintiff has failed to state a claim for "hostile environment" against defendants under 42 U.S.C. § 1981. To state a claim of a racially hostile environment under § 1981, a plaintiff must allege that: (1) he belonged to a protected group, (2) he was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of his education and create an abusive educational environment, and (5) the defendant knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Besides using the buzz words of "hostile," "offensive," and "intimidating," plaintiff has alleged no facts to suggest that defendants created a hostile environment at CCM—particularly not one that is severe and pervasive—on the basis of his national origin, race, and color.

Accordingly, plaintiff's claims under Title VII, Ohio Rev. Code § 4112.02, and for an allegedly "hostile environment" under Title VII and 42 U.S.C. § 1981 must be dismissed.

### C. Plaintiff's Due Process Claims

Defendants move to dismiss plaintiff's Fourteenth Amendment due process claims on the basis that defendant UC is not a "person" that can be held liable under § 1983. (Doc. 18 at 27). Defendants also argue that the Eleventh Amendment bars plaintiff's § 1983 claims against UC and defendants Pinto and Losada in their official capacities. (*Id.* at 27-28). Defendants further argue that plaintiff cannot assert a plausible due process claim against defendant Losada in her individual capacity because he has failed to allege that she had an active role in the alleged due process deprivation. (*Id.* at 28-29). Lastly, defendants contend that plaintiff's due process claim fails as a matter of law because plaintiff alleges that he received notice and a meaningful opportunity to respond to the allegations of academic misconduct. (*Id.* at 30-31).

In response, plaintiff argues that the Sixth Circuit's decisions in *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) and *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) support his argument that he was denied due process when he was academically dismissed from UC without being present at the hearing and without having the opportunity to cross-examine his accusers. (Doc. 21 at 6-10).

As an initial matter, plaintiff's § 1983 claims against UC and defendants Pinto and Losada in their official capacities for monetary damages are barred by the Eleventh Amendment. *McCormick*, 693 F.3d at 661-62. As explained below, plaintiff has failed to state a cognizable Fourteenth Amendment procedural due process claim against defendants Pinto and Losada in their official capacities for prospective injunctive relief and against defendant Losada in her individual capacity.

"State universities must afford students minimum due process protections before issuing significant disciplinary decisions." *Univ. of Cincinnati*, 872 F.3d at 399. *See also Baum*, 903 F.3d at 581 (the Sixth Circuit has made clear that "if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or suspension. . . ."). Suspensions or expulsions from school clearly implicate protected property interests. *Univ. of Cincinnati*, 872 F.3d at 399. Due process generally requires consideration of three distinct factors: "(1) the nature of the private interest subject to official action; (2) the risk of erroneous deprivation under the current procedures used, and the value of any additional or substitute procedural safeguards; and (3) the governmental interest, including the burden any additional or substitute procedures might entail." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). However, due process does not require that universities provide trial-like procedures. As the Sixth Circuit has explained:

> In the school-disciplinary context, an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 565-66 (6th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). We have recognized, however, that "disciplinary hearings against students . . . are not criminal trials, and therefore need not take on many of those formalities." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005). Although a university student must be afforded a meaningful opportunity to present his side, a full-scale adversarial proceeding is not required. *See id.* at 640. The focus, rather, should be on whether the student had an opportunity to "respond, explain, and defend," and not on whether the hearing mirrored a criminal trial. *Id.* at 635 (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 13 (1st Cir. 1988)).

*Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). "If the hearing is live, the accused has a right to be present for all significant portions of the hearing." *Flaim*, 418 F.3d at 635.

Plaintiff has failed to state a claim for relief for deprivation of due process. Plaintiff essentially alleges he had a due process right to be physically present at the disciplinary hearing,

and his absence was not voluntary but the result of illness. (Doc. 1, Complaint at ¶ 76).

However, plaintiff admits in the complaint that he was given notice of the academic misconduct

charges against him and an explanation of the evidence, and he requested and was afforded a

hearing. (*Id.* at ¶¶ 30, 32). The University held a hearing on April 20, 2018, which plaintiff did

not attend. (*Id.* at ¶ 32). Plaintiff had notice of the hearing and a meaningful opportunity to

present evidence in support of his claim denying responsibility for the academic misconduct.

UC's decision to hold the hearing in his absence does not amount to a deprivation of due process.

*See Uzoechi v. Wilson*, No. CV JKB-16-3975, 2018 WL 2416113, at *10 (D. Md. May 29, 2018)

(noting that the crucial question for due process is not whether the plaintiff was able to attend the

hearing, but whether he was given notice of the charges and an opportunity to be heard and

holding that the university did not violate plaintiff's clearly established due process rights

because he did not allege or present a constitutional deficiency other than the fact that the

hearing was held in his absence), *aff'd*, 735 F. App'x 65 (4th Cir. 2018), *cert. denied*, 139 S. Ct.

574 (2018); *Martinson v. Regents of Univ. of Michigan*, 562 F. App'x 365, 374 (6th Cir. 2014)

(describing a nursing student's failure to attend disciplinary hearings as "missed opportunit[ies]

to be heard."). Although plaintiff alleges that he could not attend the hearing because of "violent

chest pain" that forced him to remain in bed, plaintiff's absence from the hearing cannot be

attributable to any lack of process on the part of defendants. *See Uzoechi*, 2018 WL 2416113, at

*9 (noting that the elements consistent with due process do not require a student to be physically

present at his disciplinary hearing). The University thus gave plaintiff a "meaningful opportunity

to present his side." *Flaim*, 418 F.3d at 635. While plaintiff, and others, may view UC's

decision as unfair, the Court must bear in mind that "[i]t is not the role of the federal courts to set

aside decisions of school administrators which the court may view as lacking in wisdom or

compassion," especially where, as here, plaintiff was afforded all the necessary procedures required under the due process clause. *Pierre*, 2017 WL 1134510, at \*8 (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)); *Uzoechi*, 2018 WL 2416113, at \*10 ("it is not the Court's job to determine best practices for [the university's] disciplinary process. The Court is asked to determine whether that process was constitutionally deficient").

Plaintiff also argues he was denied due process in violation of the two recent Sixth Circuit decisions cited above, *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) and *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), when he was denied the opportunity to cross-examine defendant Losada at the hearing. Both cases involved male students accused of sexual misconduct who were denied the opportunity to cross-examine their accusers at their disciplinary hearings. In *Baum*, the Sixth Circuit reiterated its holding in *Univ. of Cincinnati*, 872 F.3d 393, and held that "if a public university has to choose between competing narratives to resolve a case [in a school disciplinary proceeding], the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." 903 F.3d at 578. The plaintiff in *Baum* never received an opportunity to cross-examine his accuser or her witnesses before the investigator or the university's Appeals Board because University rules prohibited cross-examination in misconduct cases involving sexual assaults. *Id.* at 582. The plaintiff in *Univ. of Cincinnati* was not given the opportunity to confront and question his accuser because she did not appear at his disciplinary hearing. 872 F.3d at 397.

Here, in contrast, plaintiff was not denied the opportunity for cross-examination at his hearing because he never attended the hearing in the first place. Having not attended, plaintiff cannot know whether he would have been given an opportunity to confront or question defendant Losada at the hearing. Plaintiff was given the *opportunity* to be heard at the hearing, and the fact

that plaintiff did not avail himself of this opportunity, even if through no fault of his own, does not amount to a due process violation.

Plaintiff argues that UC's Code of Conduct does not properly advise students of their right to cross-examine the accuser and adverse witnesses in accordance with the Sixth Circuit cases. (Doc. 21 at 9). However, plaintiff never alleged in his complaint that he was denied due process because UC's Code of Conduct did not include provisions for cross-examination in disciplinary hearings. Moreover, nothing in the *Baum* or *Univ. of Cincinnati* cases can be read to mandate that a university employ specific written procedures for cross-examination of witnesses at a disciplinary hearing. Thus, even if plaintiff had pled this claim, it would be unavailing.

Finally, defendant Losada in her individual capacity is entitled to qualified immunity on plaintiff's due process claim. Plaintiff has failed to present any legal authority showing it is clearly established by either the Sixth Circuit or the Supreme Court that a university is constitutionally prohibited from holding a disciplinary hearing and recommending an expulsion in the absence of the accused, whether the absence was a result of accused's choice, illness, or disability. *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (qualified immunity "shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982)). *Cf. Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961, 979 (S.D. Ohio 2018) ("The law regarding what process is due in the student disciplinary context is evolving. The Sixth Circuit has not clearly defined the contours of the circumscribed cross-examination to be afforded to an accused during a university disciplinary proceeding."). Rather, it is clearly established by the Sixth Circuit that universities must at least provide a student facing expulsion

with notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story. *Univ. of Cincinnati*, 872 F.3d at 399-400 (citing *Cummins*, 662 F. App'x at 446). Plaintiff alleges that UC afforded him these procedures. Therefore, his procedural due process claims fail as a matter of law and must be dismissed.

### D. The Court declines to exercise supplemental jurisdiction over plaintiff's state law intentional infliction of physical pain and emotional distress claim.

Plaintiff brings a state law claim for intentional infliction of physical pain and emotional distress against all defendants, alleging that defendants had knowledge of his heart and shoulder conditions and "intended to cause, or knew or should have known that their actions would result in serious physical pain and also emotional distress on Plaintiff." (Doc. 1, Complaint at ¶ 69). Because the Court has determined that all federal claims against all defendants should be dismissed, the Court declines to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3) (providing a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

## IV. Conclusion

Based on the foregoing, it is **ORDERED** that defendants' motion to dismiss (Doc. 18) is **GRANTED** in its entirety and this case is **CLOSED** on the docket of the Court.

Date: ___6/6/19___

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge